The judgment of the district court will be affirmed.

Ruth M. NOEL and William H. Frantz, Executors of the Estate of Marshal L. Noel, Deceased, Appellants,

v.

UNITED AIRCRAFT CORPORATION.

No. 15542.

United States Court of Appeals Third Circuit.

Argued Jan. 20, 1966.

Decided April 21, 1966.

2. The tax was continued by the Acts of May 24, 1955, No. 56, Sess.L.1955, p. 129, and October 12, 1956, No. 146, Sess.L.1956, p. 192, and codified in § 43 of title 33, V.I.C., effective September 1, 1957.

672

Stephen M. Feldman, Philadelphia, Pa. (Murray M. Schwartz, Wilmington, Del., Harry Norman Ball, Joseph G. Feldman, Philadelphia, Pa., on the brief), for appellants.

William Prickett, Wilmington, Del. (Prickett & Prickett, Wilmington, Del., on the brief), for appellee.

Before KALODNER, Chief Judge and McLAUGHLIN and GANEY, Circuit Judges.

KALODNER, Chief Judge.

On December 9, 1964, we affirmed, at 342 F.2d 232, the Judgment of the District Court in favor of the libellants and against the respondent on the issue of liability, and remanded the cause "with directions to grant a new trial restricted to the issue of damages in accordance with the opinion of this Court".

1. 219 F.Supp. 556, 575 (D.Del.1963).

2. The $387,387 award was stated by the District Court to represent the "present

We premised the remand on our holding that the District Court had erred in fixing damages [1] in the respect that after having made the fact-finding that the libellants' decedent had "a life expectancy of 20 years during which time I conclude he would have worked actively", it had only allowed damages for a 15-year period on its further fact-finding that the decedent "would probably have had no net income" during the first five years of his 20-year life expectancy. We ruled that fact-finding "was without evidential basis and wholly speculative and was therefore 'clearly erroneous' ", and that, moreover, the District Court had "disregarded" and "simply overlooked" testimony that the decedent would have earned "eighty-some thousand dollars" a year during the disallowed 5-year period. 342 F.2d 239–240.

We also called attention to the fact that in finding that the decedent's total earnings during the five years preceding his death aggregated $348,000, the District Court had failed to include an additional $70,000 received by the decedent during that period, making the total of his earnings $418,000 and not $348,000.

In discussing the District Court's disposition on damages we pointed out that "[t]he trial court in its fact-findings spoke of 'net income' and 'net earnings' " and that "[t]he Death on the High Seas Act allows as damages 'fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought' ", and that " '[p]ecuniary loss' is not measured in terms of, nor restricted to, 'net income' or 'net earnings' ".

We further stated that "it is not apparent from the trial court's opinion as to whether it disallowed or took into consideration" as an item of damages, interest for the seven-year period between the date of the decedent's death on June 20, 1956, and July 31, 1963, when judgment was entered in the sum of $387,387 [2] and

worth at 4%" of the total damages. It was allocated as follows: $357,387 to the decedent's widow and $30,000 to his daughter Marsha who was some 10 years

that the item of interest "should have been a factor in fixing damages" under the provisions of the High Seas Act, 46 U.S.C.A. 761 et seq. 342 F.2d 240.

Following the remand, counsel for the parties at a conference with the District Court on April 7, 1965, advised it that they did not desire to offer further evidence, and they then agreed that there remained only "the submission by each side of proposed findings of fact on the five years that are to be dealt with", pursuant to this Court's opinion.

The District Court, on July 15, 1965 entered a Decree, pursuant to an Opinion filed June 29, 1965, making a gross award of $492,500 to the libellant. The Opinion and Decree allocated $433,400 to the decedent's widow; $37,500 to his daughter Marsha, and $17,500 and $4,100, respectively to his daughters Sharon and Patricia. The damages awarded were stated to include "prejudgment interest at 4%".

The District Court's opinion stated that "In reestimating the damage figure, I bear in mind that in addition to Noel's annual earnings for the years 1951–1955, he earned $70,000 in consulting fees during this same period, that there was testimony by Frantz as to probable future earning capacity of from $100,000–$125,000 annually (including approximately $80,000 from the Venezuelan venture), that the disallowance of any earnings therefrom for the first five years amounted to sheer speculation, and that there is a difference between net income and 'fair and just compensation for the pecuniary loss. * * *'"

Libellants contend on this appeal that the District Court "violated" the scope of the remand in that it did not limit its consideration to the directed instructions in our Opinion, viz., allowance of damages, based on "pecuniary loss", for the five-year period which we had found it had erroneously disallowed at the first trial, and to the allowance of prejudgment interest from the date of the decedent's death on June 20, 1956. They also urge that the District Court further "violated" our mandate that it "capriciously disregarded its own prior findings as to the health expectancy of the deceased and the contributions the deceased would have made during the last fifteen years of his life expectancy". They say with respect to the expectancy aspect that while the District Court at the first trial had made the specific fact-finding that the decedent had "a life expectancy of 20 years during which time I conclude he would have worked actively", [3] it found on the remand that he did not have such an expectancy, and that this finding resulted in a drastic and unjustified downgrading of the quantum of the libellants' pecuniary loss. They also say that the stated premise of the District Court's present finding that the decedent did not have a "good health" expectancy for 20 years, viz., that "on one occasion, due to extreme obesity and overwork, he had been ordered to take a 4 to 6 months vacation from work" and "this situation might * * * recur again on more than one occasion with consequent severe loss of earning power", had been considered by the District Court at the first trial and had then been assigned by it as the basis of its rejection of testimony that the decedent had a life expectancy of 25 years, and its fact-finding that he would only have had a 20-year expectancy during which "he would have worked actively".

In reply, the respondent urges in sum that the District Court was free, and indeed "required" to make a wholly new determination with respect to the overall issue of damages, and that it did not ac-

---

old at the time of his death on June 20, 1956. Nothing was allowed to the decedent's daughters, Patricia and Sharon, who were respectively 20 and 17 years old at the time of the decedent's death, on the District Court's holding that they were

not "legally entitled to anything because of the finding that Mr. Noel would have had no net earnings for 5 years after his death", since they would have attained their majority during this period.

3. 219 F.Supp. 575.

cordingly "violate" the mandate of this Court.

We do not subscribe to the respondent's contention.

■ It is settled that a trial court cannot deviate from the mandate of an appellate court. Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), and that where a reviewing court in its mandate prescribes that the lower court should proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length. Federal Home Loan Bank of San Francisco v. Hall, 225 F.2d 349, 370–371, note 10 (9 Cir. 1955). To the same effect see Board of Supervisors of Wayne County v. Kennicott, 94 U.S. 498, 24 L.Ed. 260 (1877).

In the instant case, we made it abundantly clear in our Opinion and Mandate that the District Court on remand was to re-assess damages to include the five-year period which it had erroneously excluded from its found 20-year life expectancy, and that it was to further include in its re-assessment prejudgment interest from the date of the decedent's death. We also made it clear that the damages were to compensate for the "pecuniary loss" of the libellants and that they were not to be calculated on the basis of the decedent's "net income" or "net earnings" which it then appeared that the District Court had used as a standard. With respect to the latter, we are satisfied that the District Court applied the "pecuniary loss" standard on the remand, albeit we are of the opinion, for the reasons later stated that its as-

certainment of the quantum of "pecuniary loss" was "clearly erroneous".

What has been said brings us to a brief consideration of the $492,500 damage award, made by the District Court on the remand.

With respect to that award it must at once be noted that when it was made on July 15, 1965 there had accrued $31,353 compounded interest at 4 per cent on the $387,387 award made 23½ months earlier, on July 31, 1963. Thus, there was due the libellants on July 15, 1965, a total of $418,740 on the July 31, 1963 award, exclusive of recompense to be awarded them for the pecuniary loss which they had suffered during the first five-year period of the decedent's 20-year life expectancy, which we had held to have been previously erroneously disallowed by the District Court, and exclusive of prejudgment interest accrued during the nine-year period which had elapsed between the decedent's death on June 20, 1956 and July 15, 1965 on the pecuniary loss suffered by the libellants over that time.

■ The sum total of the foregoing is that the District Court's damage award on July 15, 1965 represented an allowance of but $73,760 [4] for the libellants' pecuniary loss for the stated five-year period and prejudgment interest for the stated nine-year period.

The utter inadequacy of this $73,760 allowance is demonstrated by the fact that the District Court in its 1963 damage award had manifestly determined the annual pecuniary loss of the libellants to be $32,320,[5] which, of course, makes for a total of $161,600 for the stated five-year period. Compounded prejudgment interest at 4 per cent on $161,600 for a

---

4. The sum of $73,760 represents the difference between the $492,500 award on July 15, 1965 and the July 31, 1963 award of $387,387 plus accrued compounded interest of $31,353 for the intervening period.

5. On July 31, 1963, when the $387,387 award was made, seven years had elapsed since the decedent's death on June 20, 1956. Since the District Court had al-

lowed damages for only two of these seven years on its erroneous holding that the decedent "would have had no net earnings for 5 years after his death", the $387,387 award can only be reconciled on this basis: $32,320 × two years undiscounted = $64,640, plus $322,747, discounted damages for 13 years—$32,320 × 9.986 (the present value of $1 per year for 13 years at 4 per cent).

nine-year period is $59,824. The total of the items of $161,600 and $59,824 is $221,424—three times the $73,760 allowed by the District Court with respect to them.

It would serve no useful purpose to further elaborate on the District Court's error in failing to proceed on the remand in accordance with the directions in our Opinion of December 9, 1964, and the Mandate issued pursuant to it.

The cause will be remanded to the District Court with directions to forthwith reconsider its award of damages, in accordance with our Opinion reported at 342 F.2d 232 and the Mandate issued pursuant thereto, and in accordance with this Opinion.